**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff/Respondent,** | ) | **Criminal Action No.** |
| | ) | **5:18-cr-024-DCR-MAS-1** |
| **v.** | ) | **and** |
| | ) | **Civil Action No.** |
| **ADAM HALL,** | ) | **5:19-cv-00327-DCR-MAS** |
| | ) | |
| **Defendant/Petitioner.** | ) | |
| | ) | |

**REPORT & RECOMMENDATION**

This matter is before the undersigned on Petitioner Adam Hall's ("Hall") Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. Hall alleges that he received ineffective assistance of counsel. [DE 29]. The United States responded in opposition [DE 37]. The Court held an evidentiary hearing, as described below. [DE 46]. After reviewing the record in its entirety and considering the arguments at the hearing, the Court recommends Hall's motion be denied for the reasons stated below.

## I.    RELEVANT FACTUAL BACKGROUND

On March 1, 2018, the grand jury returned an indictment charging Hall with being a convicted felon in possession of a firearm and an explosive device, respectively. [DE 1].

On April 27, 2018, Hall appeared before the Court and pleaded guilty pursuant to a plea agreement. [DE 21 (Plea Agreement); DE 20 (Rearraignment)]. Hall waived the right to appeal the guilty plea, conviction, and any sentence that did not exceed the advisory guidelines. [DE 21, at Page ID # 163]. In return, the United States agreed to dismiss Count 2 of the Indictment concerning the explosive device. [DE 21, at Page ID # 49; DE 23 (Minutes of Sentencing)]. The

1

Court conducted a detailed Rule 11 plea colloquy with Hall. [DE 34 (Transcript of Rearraignment)].

Hall was ultimately sentenced to 128 months imprisonment and three-years supervised release for the remaining count. [DE 24 (Judgment)]. Hall then timely filed the present Motion to Vacate, Set Aside, or Correct a Sentence. [DE 29].

## II.    ANALYSIS

In his motion, Hall advances three grounds as to why he received ineffective assistance of counsel. First, Hall claims his attorney failed to file an appeal when asked. [DE 29, at Page ID # 76]. Next, Hall believes his sentencing guideline calculations were incorrect and counsel's failure to object was constitutionally deficient. [*Id.* at Page ID # 84-85]. Finally, Hall contends that counsel's failure to rely upon *Rehaif v. United States*, 139 S. Ct. 2191 (2019) to contest the "knowingly" element of his § 922 conviction amounted to ineffective assistance. [*Id.* at Page ID # 85-86]. The Court will address each of these arguments below.

### A.    STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

To succeed on a § 2255 motion, petitioner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

Ineffective assistance of counsel, if proven, could constitute a constitutional error. *Strickland v. Washington*, 466 U.S. 668, 685-87 (1984). To prevail on a claim of ineffective assistance of counsel, petitioner must prove (1) that their counsel's performance was deficient, and (2) that petitioner suffered prejudice due to said deficiency. *Id.* at 687. Deficient performance is shown only through proving "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. A showing of prejudice requires a "reasonable probability that,

2

but for counsel's errors, the judicial outcome would have been different." *Id.* at 694-95. Petitioner must adequately fulfill both components of the analysis, but courts need "not address both components of the deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697.

**B.    COUNSEL DID NOT PROVIDE INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT FILING AN APPEAL.**

Hall's primary argument is that his former counsel, Mary Ann Leichty ("Leichty"), failed to file a notice of appeal challenging his conviction. [DE 29, at Page ID # 82-83]. The United States acknowledged that "the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment" and satisfies both prongs of the *Strickland* test. [DE 37, at Page ID # 158 (quoting *Campbell v. United States*, 686 F. 3d 353, 357-58 (6th Cir. 2012))]. Thus, the relevant issue before the Court was whether Hall did in fact request an appeal. If true, his counsel's failure would be a clear violation of Hall's Sixth Amendment rights. *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). Leichty, however, rejected this version of events in an affidavit. [DE 37-1, at Page ID # 163-64, 392]. Leichty attested that had Hall requested an appeal, she would have filed such notice even though Hall had waived his rights to appeal. [*Id.*].

To better understand this dispute, the Court conducted an evidentiary hearing under 28 U.S.C. § 2255(b). [DE 46]. "When a defendant presents an affidavit containing 'a factual narrative of the events that is neither contradicted by the record nor inherently incredible' and the government offers nothing more than 'contrary representations' to contradict it, the defendant is entitled to an evidentiary hearing." *Pola v. United States*, 778 F.3d 525, 532-33 (6th Cir. 2015) (quoting *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013)). Hall was appointed CJA

counsel for the limited purpose of representation at the evidentiary hearing in accordance with Rule 8(c) 2255 of the Rules Governing § 2255 motions. The evidentiary hearing occurred on February 10, 2020. Hall testified at the hearing, along with Leichty. [DEs 46-48].

At the hearing, all evidence indicated Hall failed to request an appeal. The United States presented a letter from Leichty to Hall, dated four days after Hall's judgement was entered, asking him to contact her if he wished to appeal. [DE 48, at Page ID # 189-90]. Hall's counsel indicted that Hall's parents, present at the evidentiary hearing and the primary conduit of communication between Hall and Leichty, had no evidence to support Hall's version of events. [*Id.* at Page ID # 193]. Hall agreed that he went through the plea agreement with Leichty "paragraph by paragraph[.]," including the discussion of his appellate rights. [*Id.* at Page ID # 211-12]. He admitted that Chief Judge Reeves also went through the entire plea agreement with him via a plea colloquy, specifically his appellate rights. [*Id.*]. Hall's only rebuttal was that he never saw the letter from Leichty despite "[receiving] everything else that she sent me." [*Id.* at Page ID # 195].

During his cross-examination, Hall eventually admitted that he did not in fact ask Leichty to file an appeal. [*Id.* at Page ID # 214-15]. After being asked to thoroughly outline the procedural history of his plea agreement and sentencing, Hall acknowledged he was confused over what his appellate rights were, and he was "done with this." [*Id.*]. He agreed that the comment meant he was withdrawing his motion, and that he was "over it" and "ready to go back to jail." [*Id.*]. Hall, when asked a final time if he asked Leichty to file a notice of appeal, answered "[n]o. I was told I was giving up my right to appeal," and reiterated that he would not continue to answer questions because he "just withdrew this." [*Id.*].[1]

---

[1] Although Hall made these off-handed comments, neither Hall's counsel nor the United States move the Court to withdraw or dismiss the petition based on these statements.

In summary, the facts presented at the evidentiary hearing, Hall's admission that he did not actually request an appeal, and his surrender of his petition after minimal confrontation makes his initial ground for relief unpersuasive. Accordingly, the Court recommends denial of his petition on these grounds.

C.  **COUNSEL DID NOT PROVIDE INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT TO SENTENCING CALCULATIONS.**

Hall's second allegation concerns an "improper calculation" of his Sentencing Guideline range. [DE 29, at Page ID # 83-85]. Hall, however, does not explicitly detail a specific miscalculation. Rather, he points to receiving a sentence of 120 months as grounds for an objection. [*Id.*]. By entering his plea agreement, Hall received a three-point reduction for accepting responsibility and his charge relating to possession of an explosive device was dismissed. [DE 21]. In short, Hall suggests those reductions should have somehow prevented a 120-month sentence. Because Leichty failed to recognize this point and make an objection, Hall feels he received ineffective assistance of counsel.

In short, Hall appears to misunderstand how his acceptance credit relates to his ultimate sentence. At sentencing, Hall was given a walkthrough of his Sentencing Guideline calculations. Hall's base level offense was a level 20. [DE 32, at Page ID # 98-100]. Hall received several enhancements, however, including "a two-level increase based upon a number of firearms, a two-level increase based upon the offense involving a destructive device, a two level increase because of a stolen firearm, and a four-level increase because the defendant either used or possessed a firearm or ammunition in connection with another felony." [*Id.*]. This resulted in an adjusted offense level of 30. With the three-point reduction in responsibility, Hall was given a final offense level of 27. [*Id.*]. Combined with his Criminal History Category V, *the guideline range for imprisonment was 120 to 150 months for Hall*. [*Id.*]. After this step-by-step procedure, Leichty

5

proffered to the Court several facts surrounding Hall's past to garner leniency in sentencing. [*Id.* at Page ID # 101-107]. Hall was asked if he would like to add anything to Leichty's comments, to which he responded "[t]hank you. She's covered it all." [*Id.* at Page ID # 107]. Thus, Leichty succeeded in ensuring the acceptance credit was included in the calculation and pursued a more lenient sentence.

However, the plea agreement Hall knowingly and voluntarily entered stated that his remaining count had a statutory maximum of no more than 10 years imprisonment. [*Id.* at 51]. As mentioned above, the Court conducted a detailed plea colloquy wherein Hall acknowledged he understood the terms of his plea agreement, including that the "maximum punishment for what is charged in Count 1 would be a term of incarceration for not more than ten years[.]" [DE 34, at Page ID # 135]. Likewise, Hall recognized his plea agreement was non-binding and it included several recommendations and potential enhancements to his base offense level. [*Id.* at Page ID # 138]. "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal" because of the "strong presumption of verity" of the statements made under oath during the plea colloquy. *Id.* at 74.

Putting these two together, Hall faced a guideline range of 120 to 150 months, inclusive of his acceptance credit. Hall was warned multiple times that a ten-year or 120-month prison sentence was possible under the terms of his plea agreement. In fact, the maximum statutory sentence met the lowest level of his guideline range. He testified to the Court that he understood that, in accepting his plea agreement, that the enhancements recommended by the United States would be

6

considered in his Sentencing Guideline calculations. At sentencing, Hall was given an opportunity
to address any issues he felt Leichty had failed to highlight, and he stated that Leichty had "covered
it all." Through multiple judicial proceedings, Hall overtly acknowledged that he understood the
information provided to him and the affirmative steps he was making. Leichty also understood,
advised her client accordingly, and her performance was not deficient by any measure. *United
States v. Martin*, 45 Fed. App'x. 378, 381 (6th Cir. 2002) (discussing that one's counsel cannot
provide deficient performance by failing to raise wholly meritless claims) (citing *Strickland v.
Washington*, *supra* at 688).

The Court recommends denial of Hall's petition based on these grounds.

### D.   COUNSEL DID NOT PROVIDE INEFFECTIVE ASSISTANCE OF COUNSEL BY OMITTING REFERENCE TO *REHAIF*.

Hall's final claim turns on the holding in *Rehaif v. United States*, 139 S. Ct. 2191 (2019).
In *Rehaif*, the Supreme Court elaborated on the specific requirements to uphold a § 922(g)
conviction. Regardless of its effects on the law, the *Rehaif* decision occurred after Hall's final
judgment. Counsel is not ineffective for failing to predict a future change in the law. *United States
v. Burgess*, 142 F. App'x 232, 241 (6th Cir. 2005); *see also Nichols v. United States*, 563 F.3d 240,
253 (6th Cir. 2009) (holding counsel not deficient for failing to foresee change in law). Counsel's
actions are "evaluat[ed]" from "counsel's perspective at the time." *United States v. Peake*, No.
5:15-CR-52-JMH-CJS, 2019 WL 4308769, at *2 (E.D. Ky. Aug. 20, 2019), report and
recommendation adopted, No. 5:15-CR-052-JMH-CJS, 2019 WL 4307863 (E.D. Ky. Sept. 11,
2019). Thus, this claim of deficient performance is unfounded for that reason alone.

Even setting that aside, *Rehaif* is inapplicable because Hall pleaded guilty. Post-*Rehaif*,
"[c]ourts considering § 2255 motions have declined to vacate a criminal defendant's sentence
when he has pleaded guilty to the offense." *Malone v. United States*, 2019 WL 7049805, at *3

7

(N.D. Ohio Dec. 23, 2019); *see e.g.*, *Thompson v. United States*, 2019 WL 5727976, at * 4 (E.D. Mo. Nov. 5, 2019) ("Because movant pleaded guilty ... and his case never went to trial, the burden of proof for the government had the case gone to trial, is irrelevant"); *Brewster v. United States*, 2019 WL 5076404, at 7-8 (W.D.N.C. Oct. 9, 2019); *United States v. Anderson*, 2019 WL 3806104, at *2 (N.D. Ala. July 26, 2019)). While *Rehaif* dissects the requirements to sustain a *jury conviction* under § 922(g), "because Petitioner pleaded guilty […] this contention is moot." *Malone*, 2019 WL 7049805, at *3.

Hall's guilty plea contained all the factual and legal elements required to sustain his judgment and sentence. *Id.* (citing *United States v. Broce*, 488 U.S. 563, 569 (1989)). The holding in *Rehaif* does not change this outcome. Thus, the Court recommends Hall's request for relief be denied on this ground.

### III.    CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") shall issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473,484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable

whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of the Defendant's § 2255 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is **RECOMMENDED** that a certificate of appealability be **DENIED** upon the District Court's entry of its final order in this matter.

## IV.    <u>RECOMMENDATION</u>

For the reasons stated in this decision, the Court **RECOMMENDS** that:

1) the District Court **DENY**, with prejudice, Defendant's § 2255 motion [*See* DE 29]; and

2) the District Court **DENY** a certificate of appealability as to all issues, should movant request a COA.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), FED. R. CIV. P. 72(b), FED. R. CRIM. P. 59(b), and local rule, within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this the 3rd day of March, 2020.



Signed By:
<u>Matthew A. Stinnett</u>
**United States Magistrate Judge**